**TULIA FEEDLOT, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 5–1119.**

United States District Court,
N. D. Texas,
Lubbock Division.

Nov. 30, 1973.

Clarence P. Brazill, Jr., Nelson, Mc-Cleskey, Harriger & Brazill, Lubbock, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., Robert B. Wilson, Asst. U. S. Atty., Lubbock, Tex., Fleming T. deGraffenried, Atty., Tax Div., U. S. Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case came on to be tried before the court, without a jury, on the 31st day of October, 1973, with all parties being present and being represented by counsel in open court. After hearing and considering the evidence and argument of counsel and the respective briefs filed by the parties, the court files this Memorandum Opinion which shall constitute the court's Findings of Fact and Conclusions of Law.

The plaintiff is a Texas corporation engaged in the business of farming, cattle feeding, and the custom feeding of cattle for its customers and has been so engaged each and every year since about the year 1962. The business of the corporation has increased from a capacity of feeding about 5,000 head at its inception to a capacity of about 28,000 head at the present time. The plaintiff, in

addition to custom feeding for its customers, feeds its own cattle and its farming operations produces feed for cattle in the feed yards and for grazing. The corporation lost money in the first two years of its operation and lost money again in 1968, 1970, and 1971, but made substantial profits in the other years.

Normally these operations are financed by financial institutions which require a cash payment from the borrower of approximately 30% of the cost of the cattle and the financial institution then loans the money for the balance of the purchase price of the cattle and for the necessary cost of feed, which amounts to about $100 per head. This business necessarily requires large sums of money and credit, especially with respect to the financing by the plaintiff of its own cattle feeding operations.

From the year 1966 forward there were eleven directors and principal stockholders of the corporation who owned all of the 3,400 outstanding shares of stock of the corporation, except about 22 shares owned by employees as minority stockholders. One of the directors, a Mr. Adams, shared his ownership of the stock with his son and in 1970 and subsequent years the number of principal stockholders has been increased by one or two but at all times critical to the determination of this case, the eleven referred to have owned practically all of the stock.

The plaintiff corporation is on an accrual basis for federal income tax purposes and has its fiscal year ending August 31st. The income tax return on Form 1120 was filed for this corporation for the fiscal year ending August 31, 1970 and in the return it was shown that the corporation sustained a loss of $6,309.07 and that there was no income tax liability. An audit of this return was made by the Commissioner of Internal Revenue Service who asserted a deficiency in the amount of $23,798.71 and the plaintiff paid this assessment on April 6, 1972. On May 29, 1972, plaintiff filed a claim for refund which was disallowed by the Commissioner on September 29, 1972, and this action is brought by the plaintiff to recover the assessment so paid. Accordingly, this court has jurisdiction pursuant to 28 U. S.C. § 1346(a)(1).

The deficiency was assessed because the Commissioner disallowed as a deductible expense of the business the sum of $54,000 which had been paid to the principal stockholders and directors during this fiscal year. Specifically the directors had signed an instrument of guaranty wherein they guaranteed to the Plainview Production Credit Association the payment of any indebtedness owing by Tulia Feedlot, Inc. to that association. Each person's liability was limited to $150,000, with the exception that Mr. Adams and his son guaranteed $75,000 each. The amount of the fee paid, and taken as a business expense by the corporation, was 3% of the amount of the guarantee while the amount of the guarantee of each such stockholder-director was proportionate to his percentage of ownership of the stock of the corporation. The testimony in the suit and the minutes of the board of directors indicate that this fee was to be paid annually.

These directors and stockholders had on many occasions previously executed guaranty agreements on loans made to Tulia Feedlot, Inc., and in each instance their guarantee was proportionate to their ownership of the shares of the stock in the corporation. These guarantees were: $5,000 each in 1964 to the First National Bank of Tulia, $8,000 in 1964–1965 to the First National Bank of Tulia, $45,000 in 1967 or 1968 to the First National Bank of Tulia, $91,000 on January 20, 1970 to secure a $1.1 million dollar loan from the First National Bank of Tulia, $125,000 to secure a $1.5 million dollar loan to Plainview Production Credit Association on March 10, 1970, and $150,000 guarantee each to secure a loan from said association in the amount of $1.8 million dollars on July 28, 1970. In addition, John Hancock Mutual Life Insurance Company made a

loan of $350,000 in 1968 to the corporation, the payment of which was similarly guaranteed by these directors-stockholders.

Each of these instruments of guaranty was executed by the stockholder-directors without any fee, payment, or compensation to them except for the 3% fee paid to them by the corporation for their guaranty of the $1.8 million dollar loan. However, there had been many previous discussions among the members of the board of directors that such fees should be paid and the board of directors considered the authorization of such fees for several of the guaranties above listed but it was not until the $1.8 million dollar loan was obtained that the fee was actually authorized and paid.

The stockholder-directors were not required to offer collateral to support their guarantee but the corporation secured the loan with various mortgages and other security instruments covering its cattle and certain stored feed. The John Hancock loan was secured by a mortgage on real estate.

An officer of the First National Bank of Tulia testified that although the corporation was considered to be in good financial shape that the bank would not have made any of the loans involved unless the guarantees were received by the bank insuring individual liability on the part of the stockholder-directors. Similarly an officer of the Plainview Production Credit Association stated that the loans made by the association to the plaintiff would not have been made without these guarantees.

There is evidence that although this business is not considered to be "risky," that the "ups and downs" of the cattle market did create a condition that made it necessary, from a lender's point of view, to secure these loans rather than to depend upon the assets of the corporation alone to repay the indebtedness.

Although there is evidence indicating that the corporation could have stayed in business without getting its line of credit from the association extended upward from $1.5 million dollars to $1.8 million dollars, it is obvious that this type of business could not be successfully carried on and enlarged by the plaintiff corporation without adequate and heavy financing.

The shareholder-directors who testified stated that, although they had executed similar guarantees in the past, they would not have signed the $150,000 guarantee unless they received some remuneration. By the execution of these guarantees the stockholders-directors provided a valuable and necessary service to the corporation and at the same time decreased their individual borrowing capacities because this guarantee would be listed on their financial statements as a liability, thereby reducing their net worth.

Although there is no direct evidence as to what was the usual and customary fee for guaranteeing such loans, the board of directors of the plaintiff corporation had discussed this question on many occasions and in doing so took into consideration the risk involved, the nature of the operations of the corporation, the fact that their individual lines of credit would be restricted and the current rate of interest charged by the banks and associations for these loans. It was finally agreed that the 3% fee would be charged, as it was the lowest figure upon which all the directors could agree.

The Government contends that the payment of these fees to the stockholder-directors was a distribution of income in the nature of a dividend rather than a business expense because the amount of the fees was proportionate to their percentage of ownership of the stock of the corporation. Plaintiff contends that the payment of the fees was necessary, that it was done in the ordinary course of business, that the amount of the fee was reasonable and, therefore, that the deduction should be allowed.

██ ██ The payment of amounts to the stockholders of the corporation in proportion to their ownership of the stock of the corporation constitutes prima facie evidence that the payments were dividends. But the plaintiff contends that the evidence in this case rebuts this prima facie presumption of a dividend. The court is in agreement with the plaintiff.

First of all, the fee of 3% of the amount guaranteed, under all of the facts and circumstances of this case, was reasonable. It was resasonably related to the then current interest rates and the amount of risk involved. Further, it was reasonable in light of the adverse effects on the borrowing capacity of each of the guarantors. Significantly, there is no evidence in the record that the directors of the corporation determined the amount of the fee after consideration of its effect on the amount of income tax that would have to be paid for the year 1970. To the contrary it appears that the fee was charged and the amount thereof was determined on considerations other than the resulting income tax liability to Tulia Feedlot, Inc.

Secondly the payment of such a fee was necessary. Without the loan the business could not have been successfully operated and the loans would not have been made in this case unless they were guaranteed by the directors. Further, the testimony indicates that the directors would not have guaranteed the loan which is in question in this case without the payment of a fee. Therefore, in order to operate and expand its business in an efficient manner, the plaintiff was required to pay the fee in this case.

██ It therefore appears that the plaintiff could properly deduct a fee made to a guarantor of a loan it obtained from a financial institution under these circumstances. But the question has been raised as to what portion of the fee should be allowed as a deduction for the year 1970. It should be noted that the guaranties are each dated July 28, 1970 and call for the guarantee of the payment of the indebtedness of Tulia Feedlot, Inc. to the Plainview Production Credit Association to the extent of $150,000 and that it was agreed by the directors of the plaintiff corporation that this would be an annual fee. These payments were made about one month before the termination of the corporate fiscal year. As the corporation was on an accrual basis for the purposes of income tax computations, the deduction was allowable in the taxable year in which all the events fixing liability occurred. 26 C.F.R. § 1.461–1(a)(2). The Certified Public Accountant who supervises plaintiff's records testified that, under the above test, the guarantor's fee accrued in the fiscal year ending August 31, 1970 and that the fee was thus deductible in that fiscal year. The fee was authorized and paid during the taxable year ending August 31, 1970, thus all the events determining the fact and amount of liability occurred during that year. This court is convinced that, under the above Internal Revenue Service regulation, the $54,000 in fees was fully deductible in the taxable year ending August 31, 1970.

Accordingly, it is ordered that a proposed judgment will be prepared by the attorney for the plaintiff and submitted to the attorney for the Government for approval as to form. Interest is allowed in accordance with law and all costs are taxes against the defendant.